**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-22404-BLOOM**

KAREN BRUNO,

      Plaintiff,

v.

CARNIVAL CORPORATION, d/b/a
CARNIVAL CRUISE LINES,

      Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Carnival Corporation Ltd. d/b/a Carnival Cruise Line's ("Defendant") Motion for Summary Judgment, ECF No. [35] ("Motion"). Plaintiff Karen Bruno filed a Response in Opposition, ECF No. [39], to which Defendant filed a Reply, ECF No. [45]. The Court has carefully reviewed the Motion, the submissions in support and in opposition, the record, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## I.  BACKGROUND

Plaintiff embarked on the Carnival *Celebration* on April 28, 2024. ECF No. [34] ¶ 1. Plaintiff's cabin was an accessible stateroom, as that was the type of room available when she booked the cruise. *Id.* ¶ 10. The door to Plaintiff's cabin opened automatically when she tapped her room card on it. *Id.* ¶ 11.

For four days, Plaintiff transited in and out of her cabin without incident. *Id.* ¶ 3. On May 1, 2024, she tripped over a red chair that was located within her stateroom—specifically, inside the hallway at the entrance to the cabin. *Id.* ¶¶ 2, 4; ECF No. [38] ¶ 6. Prior to that day, the chair—

though always in Plaintiff's cabin—had been placed by the balcony door. ECF No. [34] ¶¶ 5, 6; ECF No. [38] ¶ 5. However, Plaintiff noted to the stateroom attendant that the chair was blocking the balcony door and asked the attendant to clean the room. ECF No. [38] ¶ 6. It was when she returned to the room that the chair was at the entrance to the cabin. *Id.* ¶ 6.

At the time of the incident, Plaintiff was holding towels, a hat, and sunscreen. ECF No. [34] ¶ 7. The objects she was carrying blocked her ability to see the chair in full. *Id.* ¶ 9. However, Plaintiff also alleges that her view of the chair was obscured by the door, and she was not expecting the chair to be located in that area. ECF No. [38] ¶ 4.

Putu Heri Santosa was the assistant housekeeping manager on the *Celebration* in May 2024 and was therefore in charge of supervising the cleaning of staterooms for the area. *Id.* ¶ 16. Ordinarily, in the type of stateroom where Plaintiff was located, there should only be chairs placed on the balcony, and none inside the room.[1] *Id.* ¶ 17. The specific chair at issue had been requested by another guest a month prior to the incident, and thus was in Plaintiff's room prior to the cruise beginning. *Id.* ¶ 18. Santosa testified that if he was aware of a chair that had been requested by a prior guest, he would remove it. *Id.* ¶ 19. Any chairs located in the room were generally to be placed underneath the table in the room. *Id.* ¶ 20.

In May 2025, Plaintiff filed the instant lawsuit, asserting four causes of action: Negligent Maintenance (Direct Liability) (Count I), Negligent Failure to Warn (Direct Liability) (Count II),

---

[1] Defendant disputes this as mischaracterizing testimony. ECF No. [46] ¶ 17. However, Santosa's testimony clearly states as much:

> Q. And so ordinarily would there be any chairs inside the stateroom itself aside
> from the one on the balcony.
> A. No, sir.

ECF No. [38-2] at 18:7–10.

Negligent Maintenance (Vicarious Liability) (Count III), and Negligent Failure to Warn (Vicarious Liability) (Count IV). ECF No. [1].

In June 2026, Defendant filed its Motion, arguing that summary judgment is appropriate on all claims because "(1) the chair which is the subject of this lawsuit did not pose a dangerous condition; and (2) based upon an objective standard and [Plaintiff]'s own testimony, the subject chair was 'open and obvious' to any reasonable observer through the use of their own senses." ECF No. [35]. Plaintiff responds that the "open and obvious" standard does not afford Defendant a complete defense, and "it is clear that both that the placement of the chair was dangerous as a violation of policies and procedures, and that it was not open and obvious." ECF No. [39]. Defendant replies that the chair could not have been hidden by the door and was therefore "open and obvious," and there is no policy regarding placement of chairs in guest rooms. ECF No. [45].

## II.   LEGAL STANDARD

### A.   Rule 56(a) Summary Judgment Standard

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* FED. R. CIV. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Liberty Lobby, Inc.*, 477 U.S. at 24–48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see*

*also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Liberty Lobby, Inc.*, 477 U.S. at 252.

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### B.  Federal Maritime Law

In cases involving alleged torts "committed aboard a ship sailing in navigable waters," the

4

applicable substantive law is general maritime law, the rules of which are developed by the federal courts. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)); *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case."). In the absence of well-developed maritime law, courts may supplement the maritime law with general common law and state law principles. *See Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)).

## III.   DISCUSSION

### A.  Failure to Warn (Counts II and IV)

The basic elements of a negligence claim under maritime law are well settled: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014) (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to [a p]laintiff's negligence claim and [a p]laintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

Importantly, while cruise ship operators have a duty to warn of known dangers, under the open and obvious doctrine, "[a] defendant cannot be liable for failure to warn if the risk-creating

5

condition is open and obvious to a reasonable person." *Simone v. NCL (Bahamas) Ltd.*, 584 F. Supp. 3d 1206, 1213 (S.D. Fla. 2021) (citing *Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 907 (11th Cir. 2017) ("If the cruise ship did not have notice of the danger or if the danger is open and obvious to a reasonable person, the ship has no duty to warn.")); *see Carroll v. Carnival Corp.*, 955 F.3d 1260, 1267 (11th Cir. 2020) ("The open and obvious nature of a dangerous condition negates liability for a failure to warn"). "Open and obvious conditions are those that should be obvious by the ordinary use of one's senses." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015). "Whether a danger is open and obvious is determined from an objective, not subjective point of view." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1346 (S.D. Fla. 2015). However, even if the condition is open and obvious, a plaintiff's claim will not be barred unless the *danger posed* is obvious. *See Malley*, 713 F. App'x at 908 ("To determine whether a condition is open and obvious, this Court asks whether a reasonable person would have observed the condition and appreciated the nature of the condition."); *Lebron v. Royal Caribbean Cruises, Ltd.*, Case No. 16-24687-Civ, 2018 WL 5113943, at *10 (S.D. Fla. Aug. 14, 2018) ("[T]he question is not whether a condition itself was open and obvious, but whether the condition posed an unreasonable danger that would not be open and obvious to a reasonable person.").

Defendant argues that Plaintiff's account of the alleged incident does not make logical sense. ECF No. [35] at 8. Her cabin door could not physically open wide enough for a person to pass through if a chair was *behind* the door. *Id*. But even accepting Plaintiff's assertion that the chair was behind the door, Plaintiff admitted she was not watching where she was walking as she entered the cabin, and her view was obstructed by the items she was holding. *Id*. This makes clear that Plaintiff failed to observe what could reasonably be observed, undermining Defendant's liability. *Id.* at 9.

Plaintiff responds by noting that the open and obvious doctrine affords a defense only to failure to warn claims, not to negligent maintenance claims. ECF No. [39] at 2. Moreover, the placement of the chair in the hallway was not open and obvious. *Id*. The chair had never been placed there before. *Id*. Furthermore, as a matter of policy and procedure, the chair should never have been in her room, much less in the hallway entrance. *Id.* at 3. At most, it should have been under the table. *Id*.

Defendant replies that the chair was open and obvious. ECF No. [45] at 3. Ultimately, while Defendant "argues the chair could not have been behind the door (because it would have been physically impossible for Plaintiff to enter if the chair was placed there), *even if* the chair was partially behind the door, a reasonable person taking care for their own safety—and not walking with their face obstructed—would have seen and apprehended the leg of the chair that was supposedly protruding past the door." *Id.* at 3–4.

The Court finds that there is no dispute that the danger was open and obvious, affording a complete defense to liability on Counts II and IV. Plaintiff asserts that the chair was obscured by the door. ECF No. [34-1] at 26:6–14. Ordinarily, courts are not to discount a party's testimony on summary judgment. However, the Eleventh Circuit recognizes a limited exception where the testimony is "'blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law[.]'" *Blanco v. Samuel*, 91 F.4th 1061, 1070 (11th Cir. 2024) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). That is, the Court need not abandon all logic—a court may discount a version of events that "relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano*, 707 F.3d at 1253.

The Court begins by relating the undisputed events. As relayed by Plaintiff and undisputed by Defendant, the chair was not *behind* the door but was instead against the wall just past the door,

such that as the door opened, more and more of the chair would be exposed, but some portion of it—in this case, the chair's back—would always remain obscured by the door. Indeed, this appears to be the version of events proffered in Plaintiff's testimony, as Plaintiff says, "It [the chair] could not be seen by me because the back of the chair was not visible." ECF No. [34-1] at 26:12–14.[2]

But even accepting that version of events, as the parties seem to do, Plaintiff's next sentence is revealing: "The front of the chair I had my handful [sic] with towels and everything. And that would have obstructed my view of the leg of the chair. It's the leg of the chair that I fell over." *Id.* at 26:14–17. Though Plaintiff "doubt[s]" that she would have been able to see the chair even if she had not been holding the towels and other items, the Eleventh Circuit is clear that courts need not accept speculation on summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact[.]" (citation omitted)). And here, Plaintiff's speculation is belied by the laws of nature.

An individual making "ordinary use of one's senses," *Krug v. Celebrity Cruises, Inc.*, No. 17-14819, 2018 WL 3860473, at *2 (11th Cir. Aug. 14, 2018), would see the leg of a chair revealed directly in front of them. When the leg of a chair is visible—as it would have been here as the door opened—one need not see the back of a chair to perceive that there is a chair in one's line of sight. And it is mere logic that one whose line of sight is unencumbered by towels, sunscreen, and a hat, ECF No. [34-1] at 22:10—that is, one reasonably taking stock of their trajectory—would be able to see the leg of a chair. Upon seeing that chair, the danger (i.e., the risk of tripping over it) would have been obvious. Thus, the Court finds that it must dismiss the failure to warn claims (Counts II and IV), as there is no duty to warn of an open and obvious danger.

---

[2] *See also* ECF No. [34-2] at 5 ("The chair was against the wall hidden by the door[.]"); ECF No. [24-1] at 23:4–6 ("The back of the chair must have been against the wall where the door opened.").

### B.  Negligent Maintenance (Counts I and III)

The Court turns to the remaining negligent maintenance claims (Counts I and III). Defendant's core argument is as follows: Plaintiff failed to care for her own safety and act as a reasonable person, as she did not look where she was walking, entered her cabin carrying items that obstructed her view, and failed to observe an observable condition that she knew was in her room. ECF No. [35] at 9. Under such conditions, Defendant owed no duty to Plaintiff. *Id.* Indeed, courts grant summary judgment where there is no evidence of a violation of safety standards or a product defect that created the dangerous condition; here, there is no evidence that the chair itself was "dangerous." *Id.* at 11–12.

Plaintiff responds that the open and obvious doctrine does not offer a complete defense to a negligent maintenance claim, whether direct or vicarious. ECF No. [39] at 2. Moreover, "pursuant to Carnival's policies and procedures, the chair should never have been in the Plaintiff's room to begin with, and it was a further violation of Carnival's policies and procedures to place the chair in the hallway at the entrance to the cabin." *Id.* at 3. Ultimately, the placement of the chair was dangerous as a violation of policies and procedures. *Id.* at 4.

Defendant replies that there is no evidence that Defendant violated any policy. ECF No. [45] at 4–5. Indeed, Defendant's corporate representative testified that there is no policy regarding chairs in cabins. *Id.* at 5 (citations omitted). Thus, "there is no merit to Plaintiff's argument that a violation of policy supports negligent maintenance." *Id.*

With respect to a negligent maintenance claim, a "shipowner may still be liable for maintaining a dangerous condition *even if the danger was obvious*." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (emphasis added). That is, the open and dangerous doctrine does not act as "a bar to liability for negligently maintaining premises." *Carroll*, 955 F.3d at 1268.

Instead, the relevant inquiry is whether the shipowner satisfied its duty of "ordinary reasonable care under the circumstances." *Keefe*, 867 F.2d at 1322. But there are two important legal principles at play in this analysis. First, the direct negligence standard requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition," at least so long as "the menace is one commonly encountered on land [as here] and not clearly linked to nautical adventure." *Id.*; *see also Everett*, 912 F.2d at 1358. In other words, the cruise operator must have known "'or should have known' about the dangerous condition." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322).

And second, "[e]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence." *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180 (5th Cir. 1975). "Compliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care." *Id.* at 1180–81.

Based on this state of the law, the Court holds that a jury could find Defendant and its employees owed Plaintiff a duty of not placing the chair in the entrance hallway, and Defendant and/or its employees violated that duty. For one, Plaintiff has adduced competent evidence from Putu Heri Santosa, the assistant housekeeping manager at the time of the incident, who was in charge of supervising the cleaning of staterooms for the area, that Defendant's employees are not supposed to leave items or furniture such as chairs in the entrance hallway to the cabin. ECF No. [38-2] at 21:4–16. Further, Santosa testified that if a chair is observed in the entrance hallway during the cleaning process, it is supposed to be removed. *Id.* at 21:18–23, 22:23–25; 23:2. Such policy or custom would have applied to Mr. Baidowi, who had been assigned to clean Plaintiff's

10

cabin, as there was "not supposed to be a chair there." *Id.* at 23:4–24. Indeed, Defendant's corporate representative reiterated that a chair "would never be left" in the entrance hallway to the cabin. ECF No. [38-1] at 33:14–17.

Furthermore, Santosa testified that, ordinarily, there would be no chairs inside the stateroom at all aside from the one on the balcony. ECF No. [38-2] at 18:7–10. To the extent a chair was located in a room during a voyage, it was supposed to be placed underneath the table. *Id.* at 17:17–21. Tucking a chair under the table is described as the "established" custom, given that the hallway is the "safety . . . exit." *Id.* at 26:1–5. Ultimately, even if not a written policy, Plaintiff has certainly provided sufficient evidence of a custom, which a reasonable jury could find probative of the relevant duty in this case.

However, this does not entirely end the inquiry. For direct negligence claims, though not vicarious liability claims, a plaintiff must allege more than the basic negligence elements of duty, breach, causation, and damages—a plaintiff must also, as noted above, allege the defendant's actual or constructive notice of the dangerous condition. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164 (11th Cir. 2021). A plaintiff can establish constructive notice in several ways. First, a plaintiff can show that a "defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)). Second, a plaintiff can show evidence of "substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Id.* (quotation marks and citation omitted). Third, "[e]vidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition." *Carroll*, 955 F.3d at 1265 (citing *Guevara*, 920 F.3d at 720–22 and *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288 (11th Cir. 2015)). Importantly, the fact mere fact that the cruise line runs the ship is

11

not enough—constructive notice of a risk cannot be imputed merely because a shipowner "created or maintained" the premises. *Everett*, 912 F.2d at 1358–59.

Here, Plaintiff has adduced evidence that could be understood as "corrective action." Specifically, Plaintiff's testimonial evidence of custom—that chairs generally should be removed from rooms, should be placed under the table if present in the room, and should not be placed in the entrance hallway—could be viewed as evidence of corrective measures. This is directly analogous to *Carroll*, in which the Eleventh Circuit held that "adopting a policy of keeping the chairs in-line and/or in the upright position and instructing employees to ensure that they are not blocking the walkway" is evidence of corrective measures taken in response to a known danger.

Thus, the Court cannot grant summary judgment on Plaintiff's direct or vicarious negligent maintenance claims.[3]

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

      1.  Defendant's Motion for Summary Judgment, **ECF No. [35]**, is **GRANTED IN**

---

[3] Defendant's cited cases are distinguishable. In *Roberts v. Carnival Corporation*, the court found that Plaintiff had not met its burden of showing a failure to maintain, as the plaintiff failed to offer evidence in support of this point. No. 1:19-CV-25281-KMM, 2021 WL 3887819, at *11 (S.D. Fla. May 25, 2021), *aff'd*, No. 21-11792, 2022 WL 2188010 (11th Cir. June 17, 2022). Indeed, the plaintiff's own "expert testified that the seal on the subject threshold was properly in place at the time of the incident." *Id*. Here, Plaintiff has provided evidence that the chair was not in its proper place at the time of the incident, as custom dictated either having no chairs in the room or tucking them under the table.

In *Price v. Carnival Corporation*, the Court found that the plaintiff had presented no evidence indicating that the clamp was dangerous. No. 20-CV-20621, 2022 WL 2713727, at *7–8 (S.D. Fla. July 13, 2022). Her injury in and of itself did not establish a dangerous condition. *Id.* at 7. Moreover, no admissible testimony yielded evidence of a dangerous condition. *Id*. Similarly, Plaintiff had not shown *notice* of a dangerous condition, because even knowing that the clamp at issue was not flush with the floor does not on its own constitute a dangerous condition. *Id.* at 9. By contrast, here, the dangers of tripping on a partially-obscured chair just at an entryway are clear, and Plaintiff provided evidence that could be construed as corrective measures, implying knowledge of the dangers involved in placing furniture in the entrance hallway.

Case No. 25-cv-22404-BLOOM

**PART AND DENIED IN PART**.

2.   Defendant is entitled to summary judgment on Counts II and IV.

3.   Defendant is not entitled to summary judgment on Counts I and III.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 10, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record